**UNITED STATES of America,
Appellee–Cross–Appellant,**

v.

**Francesco VERSAGLIO, Defendant–
Appellant–Cross–Appellee.**

**Nos. 509, 942, Dockets 95–1238, 95–1263.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 7, 1995.

Decided June 3, 1996.

Alan Scribner, New York City (Larry Bronson, Bronson & Marx, on the brief), for defendant-appellant-cross-appellee.

Andrew W. Weissmann, Asst. U.S. Atty., Brooklyn, N.Y. (Zachary W. Carter, U.S. Atty., David C. James, Asst. U.S. Atty., on the brief), for appellee-cross-appellant.

Before: NEWMAN, Chief Judge, OAKES and CABRANES, Circuit Judges.

JON O. NEWMAN, Chief Judge:

The principal issue on this appeal is whether the Sentencing Reform Act of 1984 ("SRA" or the "Act") amends the criminal contempt statute, 18 U.S.C. § 401, to allow a court to sentence a defendant convicted of criminal contempt to both a fine and a term of imprisonment. This issue arises on an appeal by Francesco Versaglio from the judgment of the District Court for the Eastern District of New York (Edward R. Korman, Judge), entered April 28, 1995, imposing a sentence for criminal contempt that included a 21–month term of imprisonment and a $25,000 fine. Appellant contends that section 401's prohibition on the imposition of both a fine and a term of imprisonment was not superseded by the provisions of the SRA that generally permit the imposition of fines in addition to any other punishment. See 18 U.S.C. §§ 3551, 3571. The Government cross-appeals, contending that the District Court should have determined the appropriate sentence by applying the guideline for obstruction of justice, rather than the guideline for misprision of a felony.

We conclude that Versaglio could not be sentenced to both a fine and imprisonment and that since he has paid the fine, his prison sentence must be vacated. On the cross-appeal, we agree with the Government that the obstruction guideline is relevant, and therefore remand to afford the District Court an opportunity to revise upward the amount of the fine.

## Background

Versaglio is allegedly a member of the Gambino Organized Crime Family. He was granted immunity and ordered to testify in the trial of United States v. Conte, which involved charges of conspiracy to commit murder and conspiracy to distribute heroin. He refused to testify, and the case ended in a mistrial. After initially being committed for civil contempt, Versaglio was charged with criminal contempt and pled guilty.

Versaglio was sentenced on April 13, 1995, pursuant to the United States Sentencing Guidelines. The guideline for criminal contempt, U.S.S.G. § 2J1.1, directs a court to apply section 2X5.1, the guideline for "other offenses."[1]

Section 2X5.1 states that a court should apply "the most analogous offense guideline." *Id.*, § 2X5.1. The Government argued that the District Court should apply the obstruction of justice guideline, *id.*, § 2J1.2, while the defense argued that the most analogous guideline was the one for "failure to appear by a material witness," *id.*, § 2J1.5.

Rejecting both contentions, the Court applied the guideline for misprision of a felony, which specifies a maximum offense level of 19, *see id.*, § 2X4.1, and imposed both a fine and a term of imprisonment, as described above. Because Versaglio represented that the Government had control of all his disposable assets, the Court provided that the fine was not due until the Government returned the property used to secure Versaglio's pretrial release, which would occur when Versaglio surrendered to the custody of the Attorney General. On April 18, 1995, just five days after sentencing and apparently before return of his bond collateral, Versaglio paid the fine in full.

On appeal Versaglio makes the following argument: (1) under section 401, contempt is punishable by fine or imprisonment, but not both; (2) the provisions of the SRA, specifically sections 3551 and 3571, do not alter the plain meaning of section 401; (3) if two penalties are imposed where a court may legally impose only one, the satisfaction of one penalty precludes the execution of the other; and (4) since he has paid the fine, his prison sentence must be vacated.

**Discussion**

**I. The Validity of the Sentence**

 The criminal contempt statute provides:

A court of the United States shall have power to punish by fine *or* imprisonment, at its discretion, such contempt of its authority ... as—

...

(3) Disobedience ... to its lawful ... order....

18 U.S.C. § 401(3) (emphasis added). Before the SRA was passed, it was clear that a defendant convicted of criminal contempt could not be sentenced to both a fine and imprisonment under section 401. *See In re Bradley*, 318 U.S. 50, 51, 63 S.Ct. 470, 470, 87 L.Ed. 608 (1943) (construing similarly worded predecessor to section 401); *United States v. Sampogne*, 533 F.2d 766, 767 (2d Cir.1976) (holding that reasoning of *In re Bradley* applies to section 401). Our first issue is whether the SRA eliminates the choice of penalties that section 401 requires a sentencing judge to make. Though subsequent to the passage of the SRA, this Court affirmed section 401 sentences imposing both a fine and a term of imprisonment, *see, e.g., United States v. Remini*, 967 F.2d 754, 755 (2d Cir.1992); *United States v. Lohan*, 945 F.2d 1214, 1216 (2d Cir.1991), the dual nature of the sentence was not challenged, and we therefore had no occasion to consider the issue now squarely before us.[2]

Section 3551 provides:

(a) In General.—*Except as otherwise specifically provided,* a defendant who has been found guilty of an offense described in any Federal statute ... shall be sentenced in accordance with the provisions of this chapter....

---

**1.** Actually, as explained in Amendment 170, section 2J1.1. of the Sentencing Guidelines, though designated a guideline, "is not a guideline contemplated by the Sentencing Reform Act." U.S.S.G.App. C, amend. 170. The stated purpose of the provision is to refer users to the "other offenses" guideline contained in § 2X5.1. *See id.* It is unclear what significance, if any, this distinction achieves.

**2.** The Government contends that Versaglio waived his objection to the imposition of both a fine and imprisonment by not asserting it in the District Court. However, the Supreme Court has entertained this same objection despite any indication of an objection in the sentencing court, *see In re Bradley, supra,* as we did in *Sampogne,* 533 F.2d at 767, where we specifically noted the absence of an objection in the sentencing court, *id.*

(b) Individuals.—An individual found guilty of an offense shall be sentenced, in accordance with the provisions of section 3553, to—

> (1) a term of probation as authorized by subchapter B;
>
> (2) a fine as authorized by subchapter C; or
>
> (3) a term of imprisonment as authorized by subchapter D.

*A sentence to pay a fine may be imposed in addition to any other sentence.*

18 U.S.C. §§ 3551(a) & (b) (emphasis added). Section 3551 thus expresses Congress's general authorization for fines in every case unless some other provision of law "otherwise specifically provide[s]." Section 3571 reinforces the general statutory authorization for the imposition of a fine by providing that "[a] defendant who has been found guilty of an offense may be sentenced to pay a fine." 18 U.S.C. § 3571(a). Section 3571 also provides:

> (e) Special Rule for Lower Fine Specified in Substantive Provision.—If a law setting forth an offense specifies no fine or a fine that is lower than the fine otherwise applicable under this section and such law, by specific reference, exempts the offense from the applicability of the fine otherwise applicable under this section, the defendant may not be fined more than the amount specified in the law setting forth the offense.

*Id.*

Two arguments are available to avoid the disjunctive wording of section 401. The first, urged by the Government, rests primarily on section 3571. The Government argues that the "exception" phrase of section 3551 does not apply to section 401, because section 3571 requires that exceptions to "fines otherwise applicable under this section" must be made "by specific reference" in the offense statute, 18 U.S.C. § 3571(e), and section 401 does not specifically refer to the SRA. Reading section 401 to prohibit the imposition of both a fine and imprisonment is not, however, contrary to any provision of section 3571.

Section 3571 concerns the specification of fine levels. Its "exemption" language means that the fine levels specified under the SRA and the Sentencing Guidelines apply unless a lower fine is specified in another statute and that other statute specifically refers to the SRA. Section 401 does not purport to set a fine level lower than the levels specified by the SRA and the Guidelines. Its only requirement concerning a fine is that a fine may not be imposed in addition to imprisonment. Section 3571 is inapplicable to section 401, and the absence of a specific reference in section 401 to section 3571 is therefore irrelevant.

A second argument might be made from the relationship between sections 3551 and 3571, bearing in mind that Congress expressed a general preference for sentences imposing fines in addition to imprisonments. Section 3551, on its face, exempts from the SRA all statutes that conflict with the SRA, yet section 3571 purports to override some aspects of the fine provisions of other statutes. If section 3571 is to have meaning, the "except" phrase of section 3551 cannot except from the SRA *all* conflicting sentencing provisions. One way of reading both sections would be to limit the "except" phrase of 3551 to provisions of other statutes that concern levels of imprisonment, *i.e.*, statutes specifying maximum and mandatory minimum prison terms, leaving section 3571 to specify when fine provisions are overridden. That reading would mean that the disjunctive phrasing of section 401 is not exempted by the "except" phrase of section 3551 from the Congressional authorization for fines as an additional penalty.

The difficulty with this argument is that it cannot be squared with the text of the SRA. The introductory phrase of section 3551 is not limited to provisions affecting imprisonment levels. That phrase therefore must be read, in conjunction with section 3571, to exempt from the sentencing scheme of the SRA a broad range of sentencing provisions in other statutes, but not the fine levels of other statutes, since such fine levels are generally overridden by section 3571. Thus, when the SRA generally states that a fine may be imposed in addition to an imprisonment and section 401 specifically provides otherwise, the introductory phrase of section

3551 preserves the disjunctive feature of section 401.

The caselaw predominantly supports our conclusion that the SRA does not alter the disjunctive aspect of section 401. Three circuits have ruled, after enactment of the SRA, that section 401 does not permit both a fine and imprisonment. *See United States v. Hawkins,* 76 F.3d 545, 550 (4th Cir.1996); *United States v. Holloway,* 991 F.2d 370, 373 (7th Cir.1993); *United States v. White,* 980 F.2d 1400, 1401 (11th Cir.1993). Significantly, in the Fourth and the Eleventh Circuit cases, the Government agreed that a fine and imprisonment may not both be imposed. *See Hawkins,* 76 F.3d at 550; *White,* 980 F.2d at 1401. The only contrary circuit authority is the Fifth Circuit's dictum in *United States v. Holmes,* 822 F.2d 481 (5th Cir.1987), a case decided before the effective date of the SRA. *Holmes* indicated that section 3551, when effective, would allow both a fine and imprisonment for a violation of section 401, *id.* at 495–96, but declined to allow such a sentence for a contemnor sentenced in 1985 because doing so would disregard the 1987 effective date of the SRA, *id.* at 496.

We hold, in agreement with the circuits that have ruled authoritatively on the question, that section 401 has not been superseded by the SRA. Versaglio's sentence is therefore invalid to the extent that it requires both a fine and imprisonment.

## II. The Consequence of the Invalid Sentence

■ If the sentence may not validly include both a fine and imprisonment, the Government nevertheless contends that the District Court should now be afforded the option to choose between a fine and imprisonment. Versaglio contends that his payment of the fine precludes consideration of the option of imprisonment. We agree with Versaglio.

The Supreme Court first considered this issue more than 100 years ago. *See Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873). The Court ruled that a defendant, convicted under a statute authorizing alternative punishments of fine or imprisonment, but initially sentenced to a fine and imprisonment, could not be resentenced to imprisonment after payment of a fine. *See id.* at 175. Though the ruling seems influenced by the fact that the money had not only been paid to the Clerk of the sentencing court but had also "passed into the Treasury of the United States, and beyond the legal control of the court, or of any one else but the Congress of the United States," *id.,* the Court later reiterated the holding of *Lange* and made clear that payment discharged the sentence the moment the fine was paid to a court official, regardless of whether the funds were transferred to the Treasury, *Bradley,* 318 U.S. at 52 & n. 3, 63 S.Ct. at 471 & n. 3. However much we might be persuaded by the dissenting opinions in *Lange* and *Bradley,* we are obliged to follow the Supreme Court's unequivocal holdings.

We have also considered the contention advanced by Judge Brown's dissent in *Holmes,* 822 F.2d at 502, and are not persuaded by it. Judge Brown concluded that the Supreme Court had eroded the force of *Lange* and *Bradley* by the later decision in *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). *DiFrancesco* upheld, against a double jeopardy challenge, the Government's statutory right to appeal a sentence under specified circumstances, *see* 18 U.S.C. § 3576, and obtain a higher sentence on remand after a successful appeal. *See DiFrancesco,* 449 U.S. at 143, 101 S.Ct. at 440–41. In making that ruling, the Court rejected dictum from *United States v. Benz,* 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931), which, in reliance on language in *Lange,* had appeared to foreclose any increase of a sentence after service of the sentence had begun. The Court stated:

> The holding in *Lange,* and thus the dictum in *Benz,* are not susceptible of general application. We confine the dictum in *Benz* to *Lange*'s specific context.

*DiFrancesco,* 449 U.S. at 139, 101 S.Ct. at 438. Judge Brown took this narrowing of *Lange* to mean that *Lange* stands only for the proposition that a defendant may not receive a sentence greater than what the legislature has authorized, and "no longer supports the proposition cited in *Bradley* that once an alternative penalty of a sentence

948

is served, the Court is unable to reform the remaining portion to make the total sentence legal." *Holmes,* 822 F.2d at 504 (Brown, J., dissenting).

■ The majority opinion in *Holmes,* 822 F.2d at 496–500, and a later Supreme Court decision, *Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989), persuasively refute Judge Brown's contention. Though *Lange*'s holding has been confined to its context by *DiFrancesco,* that context is precisely the one presented in *Bradley, Holmes,* and the pending appeal—a defendant who has paid a fine and thereby gained insulation from an alternative sentence of imprisonment. *See Jones,* 491 U.S. at 382–84, 386, 109 S.Ct. at 2526–28, 2528. Moreover, without a hint of disapproval, *DiFrancesco* quotes the key language from *Lange:*

The fine having been paid and the defendant having suffered one of the alternative punishments, "the power of the court to punish further was gone."

*DiFrancesco,* 449 U.S. at 138, 101 S.Ct. at 438 (quoting *Lange,* 85 U.S. at 176). We cannot disregard two Supreme Court holdings on the basis of a third Supreme Court decision when that later decision includes language quoting, without disapproval, the key passage of one of the earlier decisions. In addition, *Jones,* which limited *Bradley* to its facts, made clear that both *Lange* and *Bradley* continue to support the proposition that where the legislature has prescribed "tru[ly]" alternative punishments for a single criminal act, satisfaction of one type of punishment precludes imposition of the other. *Jones,* 491 U.S. at 382–84, 109 S.Ct. at 2526–28.

Apparently accepting the continued force of *Lange* and *Bradley,* the Government nevertheless attempts to distinguish them on the ground that since Versaglio was under no duty to pay the fine until after the Government released his assets, his early payment did not operate to fulfill his sentence. We reject this argument. If a defendant surrendered himself to the custody of the prison authorities before the day he was required to do so, no court would seriously entertain the notion that the defendant should not receive credit for time served. Likewise, since the

defendant paid the fine in full, and received a satisfaction of fine judgment signed by the United States Attorney's Office, he has "suffered one of the alternative punishments to which alone the law subjected him." *Lange,* 85 U.S. at 176. Moreover, the dissenters in *Lange* argued that the defendant in that case should not have been able to preclude imposition of imprisonment because "much reason exists to suppose" that he had induced the court clerk to deposit the fine in the Treasury "early" just to be able to avoid the alternative of imprisonment. *Lange,* 85 U.S. at 200 (Clifford, J., with whom Strong, J., joins, dissenting). The *Lange* majority evidently thought this circumstance was of no consequence.

Thus, even if it were possible for the Government now to return the fine to Versaglio, the rule of *Lange* and *Bradley* would preclude imposition of the alternative punishment of imprisonment.

III. Revision of the Amount of the Fine

■ Even though payment of the fine precludes imposition of imprisonment, a further question arises as to whether the *amount* of the fine may now be revised in light of the invalidity of the imprisonment. At first glance, the language of *Lange* would seem to preclude such a revision, since the Court said that upon payment of the fine, the power of the sentencing court was "gone." *Lange,* 85 U.S. at 176. However, *Jones* explicitly rejected a literal reading of that statement, characterizing it as dicta. *See Jones,* 491 U.S. at 382–83, 109 S.Ct. at 2526–27. *Jones* and *DiFrancesco* have limited *Lange* and *Bradley* to their context, in which a sentencing court attempted to impose imprisonment upon a defendant who had satisfied the alternative punishment of a fine. No issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment. Indeed, such a revision could not even have been considered in *Lange* because the fine imposed was the statutory maximum of $200. *See Lange,* 85 U.S. at 164.

In some circumstances, we have upheld the authority of a sentencing court to revise up-

ward one component of a sentence after another component was held to have been invalidly imposed. *See United States v. Medina*, 74 F.3d 413, 417–18 (2d Cir.1996) (permitting increased sentence on related count after invalidation of sentence on count charging violation of 18 U.S.C. § 924(c)); *United States v. Diaz*, 834 F.2d 287, 290 (2d Cir. 1987) (same), *cert. denied*, 488 U.S. 818, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988); *see also United States v. Bohn*, 959 F.2d 389, 394–95 (2d Cir.1992) (permitting consideration of imprisonment after reduction of fine); *United States v. Young*, 932 F.2d 1035, 1037–38 (2d Cir.1991) (permitting consideration of fine after invalidation of restitution). We have done so only where the revised sentence would be imposed on a count that was the same as, or related to, the count on which a component of the sentence was invalidated and only where the aggregate sentence was not "so severe as to create an undue risk of deterring others from subsequent challenges to sentence components that might be unlawful." *Bohn*, 959 F.2d at 395. In permitting such revisions after successful challenges to a component of a sentence, we distinguished cases generally precluding revised sentences after retrial following successful challenges to a conviction, *see id.* at 394–95 (distinguishing *United States v. Barash*, 428 F.2d 328 (2d Cir.1970), *cert. denied*, 401 U.S. 938, 91 S.Ct. 928, 28 L.Ed.2d 217 (1971), and *United States v. Coke*, 404 F.2d 836 (2d Cir.1968) (in banc)).

In selecting $25,000 as the appropriate fine, we think it reasonable to assume that Judge Korman had in mind the aggregate punitive effect of his sentence. Now that the 21–month term of imprisonment is being set aside, the sentencing judge should have the option of considering whether to make an upward adjustment in the amount of the fine.

## IV. The Appropriate Sentencing Guideline

■ Since the amount of the fine may be increased, it is necessary to assess the Government's claim on the cross-appeal that the District Court erred in deeming misprision of a felony to be the relevant analogy for Versaglio's contempt offense, rather than obstruction of justice. Even though Versaglio

is no longer subject to imprisonment, selection of the most analogous guideline remains pertinent for determination of the appropriate range from the fine table. *See* U.S.S.G. § 5E1.2(c)(3).

Judge Korman used the guideline for misprision of felony, *id.*, § 2X4.1, rather than the guideline for obstruction of justice, *id.*, § 2J1.2(c), primarily because he concluded that the obstruction guideline, which calls for more severe punishment, would be appropriate for obstructive conduct that threatens a witness with violence, but not for Versaglio's conduct, which involved a refusal to testify. We agree with the Government that the obstruction guideline supplies the relevant analogy, whether the obstructive conduct is the withholding of testimony after a court order to testify or more serious conduct such as threatening a witness. *See Remini*, 967 F.2d at 760. We appreciate Judge Korman's concern that the severity of the guideline range for obstruction groups refusing to testify with more serious forms of obstruction, but the remedy is to apply additional sanctions appropriate for the more serious conduct, *see* U.S.S.G. § 2J1.2(b)(1), not to disregard the applicability of the obstruction guideline.

In this case, as in *Remini*, the District Court found that Versaglio refused to testify in order to obstruct the trial in which he was called as a witness. The obstruction guideline therefore supplied "the most analogous offense guideline," *id.*, § 2X5.1, for the criminal contempt. That guideline, in the circumstances of Versaglio's offense, yields a base offense level of 30; with the three-level reduction for acceptance of responsibility, the offense level is 27. At that level, the fine table specifies a maximum fine of $125,000. *Id.* § 5E1.2(c)(3). On remand, the District Court may consider the appropriateness of revising the fine up to $125,000.

### Conclusion

We vacate Versaglio's prison sentence and remand the fine component of the sentence to afford the District Court an opportunity to revise the amount of the fine.